**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

In Re Internap Network Services
Corp. Securities Litigation

:    CIVIL ACTION NO.
:
:    1:08-cv-03462-JOF

## ORDER

This matter is before the court on Plaintiffs' Motion to Certify Class [68].

## I. Background

### A. Procedural History

This is a federal securities class action filed against Internap Network Services Corp. ("Internap") and two of its former officers, David Buckel and James DeBlasio. Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 77t, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by knowingly or recklessly making false and misleading statements that artificially inflated Internap's stock price.

On September 30, 2011, the court granted in part and denied in part Defendants' motion to dismiss, holding that Plaintiffs' claims may go forward as to certain of Defendants' May 3, 2007, and April 3, 2008, statements. Plaintiffs now move for class certification.

AO 72A
(Rev.8/82)

**B. Facts**[1]

On February 20, 2007, Internap acquired VitalStream, a "leader in audio and video streaming services and a global provider of integrated rich media content delivery services that enable businesses to broadcast digital media content to worldwide audiences via the Internet." Fourth Am. Compl., ¶ 27. As part of the transaction, Internap acquired Vital Stream's content distribution network ("CDN"). *Id.*, ¶ 3.

In the 14 or so months that followed, Defendants made a number of statements touting the progress and success of Internap's integration of VitalStream, as well as the stability and reliability of the companies' combined networks. Plaintiffs allege these statements were false and/or misleading, and in its previous order, the court allowed Plaintiffs' claims to go forward as to certain of Defendants' statements. Specifically, the court allowed Plaintiffs' claims to go forward against Defendants Internap and Buckel as to the following May 3, 2007, statements: (1) Internap had made "significant progress in the integration of VitalStream;" (2) Internap's CDN "platform deliver[s];" (3) "We have scrubbed the VitalStream operations to meet our business standards;" (4) "With CDN and monetization solutions integrated into our IP and colocation portfolio . . . .;" (5) "Now that we have largely brought VitalStream's financial and operational functions into our systems . . . .;"

---

[1] This court's order on Defendants' motion to dismiss contained a lengthy discussion of the facts of this case, which will not be repeated here. *See* Order, dated Sept. 30, 2011, D.E. [52]. Instead, the court will provide a brief summary of the relevant facts.

2

and (6) statements that the migration of traffic from one network to the other was going "very smoothly."[2] Order, dated Sept. 30, 2011, D.E. [52], at 66. The court also allowed Plaintiffs' claims to go forward against Defendants Internap and DeBlasio as to two statements in the company's April 3, 2008, Form 8-K: (1) "We have substantially finalized integrating our combined networks through technological improvements and systems integration with operational stability since November [2007];" and (2) "In the fourth quarter 2007, management increased the reliability and reach of the platform and solidified the CDN customer base." Fourth Am. Compl., ¶¶ 172-73; Order, dated Sept. 30, 2011, D.E. [52], at 57-59. Plaintiffs contend Defendants' statements artificially inflated the company's stock price, leading them to suffer damages when Internap revealed portions of the truth on three separate occasions.

Plaintiffs seek an order from the court (1) certifying this case as a class action on behalf of all persons or entities that purchased the common stock of Internap during the

---

[2] In its previous order, the court found that Plaintiffs had sufficiently pled scienter as to Buckel with respect to his May 3, 2007, statements, but failed to plead scienter as to DeBlasio with respect to his May 3, 2007, statements. Defendants state that, given these findings, it is unclear whether the court intended DeBlasio's four statements to survive dismissal as to Buckel and Internap, despite the fact that Internap and Buckel did not make the statements. Buckel, however, was on the conference call with DeBlasio when he made those false and misleading statements, and his silence signaled his agreement with and ratification of those statements. An officer and corporation may not escape liability by simply having another without scienter make the false and misleading statements. Thus, as the court stated in its previous order, Plaintiffs' claims as to all six May 3, 2007,, statements may go forward against Buckel and Internap.

3

period from May 3, 2007 through August 5, 2008, inclusive (the "Class Period") and were damaged thereby; (2) certifying Plaintiffs Stephen Anastasio, Curtis Whitaker, and Fred Matise as Class Representatives; and (3) approving Lead Plaintiffs' counsel, Abraham, Fruchter & Twersky, LLP, as Class Counsel and Harris Penn Lowry DelCampo LLP as Liason Counsel.[3]

### C. Contentions

Plaintiffs argue class certification is appropriate because they have satisfied the prerequisites of Federal Rule of Civil Procedure 23. Defendants respond that Plaintiffs lack standing to represent a class action on behalf of investors who purchased based on the alleged April 3, 2008, misstatements because no class representative bought Internap stock after that date. Defendants contend that for this same reason, there will be unique reliance and causation defenses against each of the Plaintiffs that would not be available against shareholders who purchased stock after April 3, 2008, and therefore Plaintiffs fail to satisfy the typicality requirement of Rule 23(a). Defendants also argue Plaintiffs are inadequate representatives of the class and have failed to show that common issues predominate over individual issues.

### II. Discussion

---

[3] In their motion, Plaintiffs seek court approval of Evangelista & Associates, LLC as Liason Counsel. On June 25, 2012, however, the court approved Plaintiffs' request to substitute the law firm of Harris Penn Lowry DelCampo LLP for Evangelista & Associates as Liason Counsel. D.E. [76].

AO 72A
(Rev.8/82)

Rule 23 of the Federal Rules of Civil Procedure governs class certification and management in the federal courts. However, before engaging in any Rule 23 analysis, the court must determine that at least one named class representative has Article III standing to raise each class subclaim. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.'" *Id.* (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)).

### A. Standing

Defendants argue Plaintiffs lack standing to represent a class action on behalf of investors who purchased stock based on the alleged April 3, 2008, misstatements because no proposed class representative bought Internap stock after that date. To support their assertion, Defendants rely on *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir. 1992). There, the court found that "[s]uch post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statement could not have affected the price at which the plaintiff actually purchased." *Id.* at 1420. Defendants reason that because Plaintiffs have no claim of their own based on the post-purchase statements, they are not proper representatives of a class of persons who bought Internap stock after Defendants' allegedly fraudulent April 3, 2008, statements.

5

Internap was having problems integrating its new acquisition, VitalStream. Defendants made the first set of statements touting the success of integration and the performance of the newly acquired unit. Plaintiffs allege these statements were false and misleading. Defendants' glowing and optimistic statements would in the nature of such things have an effect on the market price of Internap's stock. Plaintiffs contend the problems continued, Internap did not correct the market's erroneous valuation, and the second set of statements merely perpetuated the false and misleading perception regarding integration and performance of the new business unit. Thus, the court finds that anyone who purchased stock after the first set of statements has standing to represent a class of purchasers similarly defrauded by Defendants' related April 2008 statements. Both sets of statements can be said to have been made in furtherance of a common scheme to defraud, which began before Plaintiffs purchased their shares of stock. This holding is supported by numerous other decisions around the country. *See, e.g.*, *Upton v. McKerrow*, 887 F. Supp. 1573, 1577 (N.D. Ga. 1995) (Shoob, J.) ("Therefore, the Court concludes that plaintiff does have standing to assert claims under § 10(b) which arise from statements made after she purchased shares because these statements were allegedly made in furtherance of a common scheme to defraud which began before plaintiff made her last purchase of Longhorn stock."); *Renz v. Schreiber*, 832 F. Supp. 766, 772 (D.N.J. 1993)*; Robbins v. Moore Medical Corp.*, 788 F. Supp. 179, 187-88 (S.D.N.Y. 1992); *Hoexter v. Simmons*, 140 F.R.D. 416, 422 (D. Ariz.

6

1991). *Walsh v. Chittenden Corp.*, 798 F. Supp. 1043, 1055 (D.Vt. 1992) ("There would be little sense in cutting off the class period on the day plaintiff happened to buy, since the thrust of plaintiff's action is that [defendant]'s public statements over a period of time. . . constituted a fraud on the market. A class representative has standing to represent all investors similarly defrauded by the alleged scheme, regardless of the representative's date of purchase."); *Nicholas v. Poughkeepsie Savings Bank/FSB* No. 90 CIV.1607(RWS), 1990 WL 145154, at *5 (S.D.N.Y. 1990) (rejecting defendants' argument because it implies that only someone who bought on the last day of the Class Period would be able to bring an action).

For these reasons, the court finds that Plaintiffs have standing to represent a class action on behalf of investors who purchased stock after the April 3, 2008, statements.

### B. Rule 23 Analysis

To qualify for class certification, Plaintiffs must satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *See* FED. R. CIV. P. 23(a) & (b); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). Specifically, Rule 23(a) requires Plaintiffs to show that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

7

AO 72A
(Rev.8/82)

FED. R. CIV. P. 23(a). These four requirements are commonly referred to as "'the prerequisites of numerosity, commonality, typicality, and adequacy of representation,' and they are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982)).

### 1. Rule 23(a)

#### i. Numerosity

Numerosity requires Plaintiffs to show that the members of the proposed class are so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a). In "federal securities fraud cases, numerosity is generally presumed when a claim involves nationally traded securities." *Scientific-Atlanta*, 571 F. Supp. 2d at 1325 (internal quotation and citation omitted).

Defendants do not dispute numerosity, and it is clear that this requirement is satisfied here. At all relevant times, Internap's stock was listed and traded on the NASDAQ Global Select Market. In its form 10-K for fiscal year 2007, Internap reported 24,600 holders of record of its common stock as of March 6, 2008. Given the large number of traders of Internap stock during the Class Period, the court finds that joinder would be impracticable. Plaintiffs have satisfied the numerosity requirement.

#### ii. Commonality

8

AO 72A
(Rev.8/82)

In order to satisfy the commonality requirement, Plaintiffs must show the presence of questions of law or fact common to the entire class. FED. R. CIV. P. 23(a)(2). The purported class action must involve issues that are susceptible to class-wide proof. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). "While not entirely dissimilar to the typicality requirement, Rule 23(a)'s commonality requirement measures the extent to which all members of a putative class have similar claims." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tysons Foods, Inc.*, 546 U.S. 454, 457 (2006).

Defendants do not dispute that the commonality requirement is satisfied here. Plaintiffs allege that Defendants made a number of false and misleading statements during the Class Period which artificially inflated the price of Internap stock to the detriment of investors. Common questions of law or fact include (1) whether Defendants violated the Exchange Act and Rule 10b-5; (2) whether Defendants acted with knowledge or sufficient reckless disregard for the truth in misleading investors regarding integration and business performance; (3) whether the price of Internap's stock was artificially inflated because of the alleged material misrepresentations and omissions; (4) whether Defendants Buckel and DeBlasio were control persons within the meaning of § 20(a) of the Exchange Act; and (5) whether members of the proposed class have sustained damages as a result, and if so, the

9

amount of those damages. As this discussion makes clear, Plaintiffs have demonstrated commonality.

### iii. Typicality

To satisfy the typicality requirement, "a class representative must possess the same interest and suffer the same injury as the class members . . . ." *Murray*, 244 F.3d at 811. The standard for judging typicality was set forth in *Kornberg v. Carnival Cruise Lines, Inc.*:

> [T]here must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

741 F.2d 1332, 1337 (11th Cir. 1984).

Defendants contend Plaintiffs are unable to establish typicality. According to Defendants, none of the Plaintiffs can demonstrate reliance on the April 3, 2008, Form 8-K because their purchases occurred prior to those statements. Defendants therefore insist that they will have reliance and loss causation defenses against each of the Plaintiffs that would not otherwise be available against shareholders who purchased stock after April 3, 2008.

The court does not find that factual variation in the timing of stock purchases negates typicality. The heart of Plaintiffs' Complaint is that the Defendants engaged in a course of deceitful conduct to conceal the true state of affairs at Internap–that it was struggling to

10

integrate VitalStream and stabilize its new CDN unit. The statements made on April 3, 2008, were a continuation of the alleged fraud that began in May 2007. Regardless of whether individuals purchased shares shortly after May 2007 or April 2008, they were relying on similar alleged misrepresentations, which Plaintiffs contend artificially inflated Internap's stock price.

Judge Story reached a similar conclusion in *Scientific-Atlanta*. There, Defendants argued the typicality requirement was not satisfied because the named plaintiffs' claims were factually different in that all of the plaintiffs purchased their shares of stock prior to a July 19, 2011, disclosure. Judge Story rejected this argument, writing that

> [t]he Court is not convinced that the claims of the named class representatives are rendered atypical merely because they purchased their shares of SA stock prior to the alleged curative disclosure of July 19, 2001. Plaintiffs, as a class, allege that Defendants issued a series of false or misleading statements in the first half of 2001 (all prior to the July 19, 2001 disclosure) that had the effect of shielding declines in demand for SA's products from the market and artificially inflating the market price for SA stock. They further allege that they relied on the integrity of the market, which incorporated these misstatements, in purchasing or acquiring SA stock during the class period, both before and after the July 19, 2001 partial curative disclosure. Finally, they allege that they suffered a loss as a result of Defendants' misrepresentations when the truth regarding Defendants misrepresentations made in the first half of 2001 was revealed through both the July and August disclosures. Because the claims of the named class representatives rely on the same allegations of misrepresentations and omissions and share the same legal theory as those of the class they seek to represent, they have established the requisite typicality under Rule 23(a)(3).

11

*Scientific-Atlanta* 571 F. Supp. 2d at 1326. Similarly, here, Plaintiffs, as a class, allege that Defendants issued a number of false and misleading statements in May 2007 and April 2008 that artificially inflated the share price of Internap's stock. Plaintiffs, like those in *Scientific-Atlanta*, also allege that they relied on the integrity of the market, which incorporated these misstatements, in purchasing Internap stock. Finally, Plaintiffs allege they suffered loss as a result of Defendants' fraud when Internap revealed portions of the truth on three separate occasions – November 6, 2007, March 18, 2008, and August 5, 2008. "That both the named Plaintiffs' claims and proposed class members claims arise from this same alleged course of conduct overrides any factual divergences which may exist." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992). The court finds that typicality is satisfied here.

### iv. Adequacy of Representation

The adequacy of representation prerequisite requires Plaintiffs to demonstrate that they will adequately protect the interests of those they seek to represent. "This 'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460-61 (N.D. Ala. 2003)). "Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a fundamental one

AO 72A
(Rev.8/82)

going to the specific issues in controversy." *Id.* at 1189 (internal quotation and citation omitted).

Plaintiffs assert there are no intra-class conflicts present in this case. They insist their interests are in harmony with those of other class members because Defendants' course of conduct was common to all class members and each incurred losses from their purchases of Internap stock. Plaintiffs argue there is nothing to suggest any of them have a conflict with the absent class members in this case, and none is subject to any unique defense.

Defendants, on the other hand, contend that Plaintiffs have "improper" financial arrangements with unapproved counsel, rendering them inadequate representatives of the class. In support, Defendants discuss Plaintiff Matise's arrangements with two different law firms thus far in the case. Initially, Matise signed an engagement letter with the Law Office of Howard Smith. That engagement letter stated that Smith is representing Matise on a contingency fee basis and also gave Smith discretion to associate with other co-counsel as he deems appropriate. Defendants' Resp., Exh. C. After being engaged by Matise, Smith apparently associated with the law firm of Glancy, Binkow & Goldberg to provide additional representation to Matise. The Glancy law firm has also not sought approval by the court to represent the class nor have any of its attorneys appeared in this case. Defendants point out that Plaintiff Whitaker is represented by yet another firm, Federman & Sherwood. Defendants insist that these arrangements, which allow unapproved outside

13

law firms to be paid on a contingency basis, should be rejected. Defendants also reference various other "odd" facts surrounding the various Plaintiffs' arrangements with counsel.[4]

Defendants appear to be arguing that these financial arrangements create a conflict of interest between Plaintiffs Matise and Whitaker and the class. The court agrees that several issues could arise from Matise and Whitaker's use of outside counsel. First, because attorneys have the power to settle claims on behalf of their clients, the court has concerns about the possibility of a settlement between proposed class representatives Matise and/or Whitaker and Defendants, and the potential impact such a settlement could have on the class. It is unclear to the court whether a settlement under those circumstances would be binding upon other class members. Second, the court has concerns about the possibility of conflict between attorneys when the proposed class representatives have retained at minimum five different law firms. Third, and finally, the court has no way of discerning how any proceeds from a potential settlement or victory for Plaintiffs would be distributed among all the different attorneys and what effect that would have on the class. The Fifth Circuit has indicated that where proposed class representatives hire outside counsel on a contingency fee basis, the potential for conflict is disqualifying. *See Feder v. Electronic Data Systems*

---

[4] These supposed oddities include: (1) the fact that Plaintiff Anastasio's engagement letter with proposed class counsel Abraham, Fruchter & Twersky is dated March 9, 2012, two days after Defendants requested copies of all engagement letters as part of discovery; and (2) the engagement letter references a previous agreement with another attorney, Irwin Echtman, who apparently is now deceased.

14

*Corp.*, 429 F.3d 125, 132 n.4 (5th Cir. 2005). Here, for the above-stated reasons, the court finds that Matise and Whitaker's use of outside counsel makes them inadequate class representatives. If Matise and Whitaker would like this court to appoint them as class representatives, they must first reach an agreement with lead counsel that allays the court's concerns. Counsel for Matise and Whitaker must agree to submit to the authority of lead counsel as outlined in the court's previous order appointing Abraham, Fruchter & Twersky LLP as loud counsel for the class. *See* Order, dated April 9, 2009, granting Plaintiffs' First Motion to Appoint Counsel.

None of this analysis applies to Plaintiff Stephen Anastasio, however. As to Anastasio, the court finds that his interests are in harmony with those of other class members. There does not appear to be any substantial conflict of interest between Anastasio and the class.

The second prong of the adequacy test requires Plaintiff Anastasio to show that he will adequately prosecute this action, "[A] principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Kirkpatrick*, 827 F.2d at 726. This inquiry involves questions of whether Plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation. *Id.*

15

Plaintiff has demonstrated his commitment to this litigation since the filing of the Complaint almost four years ago. Since then, Plaintiff has reviewed and filed several additional lengthy complaints, submitted to discovery, and made himself available for a deposition. Moreover, in the initial motion to appoint counsel and lead plaintiff, Plaintiff Anastasio demonstrated that he, Catherine Anastasio, and Curtis Whitaker have the largest known financial interest in the relief sought by the class. *See* Mot. to Appoint Counsel, D.E. [8], at 13 (showing that the Anastasio group suffered losses of approximately $556,644). Based upon his conduct thus far, and the financial losses he has suffered, it appears that Plaintiff will pursue this litigation with forthrightness and vigor.

As to the competency of counsel, the firm resume of Abraham, Fruchter & Twersky, lead counsel, clearly demonstrates that Plaintiff's attorneys are qualified, experienced and able to conduct this litigation. *See* Plaintiffs' Mot. to Certify, Evangelista Decl., Exh. B (containing a long list of the firm's success in securities litigation).

For these reasons, the court finds that Plaintiff Anastasio has satisfied Rule 23's adequacy of representation requirement.

16

### 2. Rule 23(b)

In addition to the requirements of Rule 23(a), Plaintiff must satisfy one of the alternative requirements of Rule 23(b). Plaintiff seeks certification under subsection (3) of Rule 23(b), which provides that an action may be maintained as a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### a. Predominance of Common Issues

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "A plaintiff may satisfy this requirement by showing that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 691 (N.D. Ga. 2003) (Murphy, J.). "It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *In re Miller Indus., Inc. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999) (Thrash, J.) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)).

17

"To determine whether common questions predominate, we are called upon to examine the cause(s) of action asserted in the complaint on behalf of the putative class." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003) (internal quotation and citation omitted). Plaintiff asserts violations of § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, and § 20(b) of the Exchange Act. In order to determine whether the predominance requirement is satisfied, the court must examine the requirements necessary to prevail on these claims, and whether the elements of the claims are susceptible to class-wide proof.

A claim for violation of § 10(b) and Rule 10-b-5 requires proving "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Plaintiff alleges Defendants knowingly or recklessly made a number of false statements regarding internal company operations that artificially inflated the company's stock price. Proof as to the falsity and materiality of these public statements is clearly susceptible to class-wide proof. Similarly, proof of Defendants' scienter and the alleged artificial inflation and subsequent decline of Internap's stock price are both also susceptible to class-wide proof. As to reliance, Plaintiff relies on the "fraud on the market theory," "which relieves [Plaintiff] of the burden of proving actual, individualized reliance on a defendant's misstatement by permitting a rebuttable presumption that the plaintiff relied

18

AO 72A
(Rev.8/82)

on the 'integrity of the market price,' which incorporated the misstatement." *Scientific-Atlanta*, 571 F. Supp. 2d at 1337 (internal quotation and citation omitted). Plaintiff is entitled to this rebuttable presumption of reliance if he can show (1) Defendants made public material misrepresentations, (2) the shares were traded in an efficient market, and (3) Plaintiff traded shares between the time the misrepresentations were made and the time the truth was revealed. *Scientific-Atlanta*, 571 F. Supp. 2d at 1337 (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F. 3d 657, 661 (5th Cir. 2004)).

Plaintiff alleges that Defendants made public statements in a conference call with analysts and in Internap's Form 8-K. Plaintiff alleges that he traded shares between the time the statements were made and the truth was revealed. Plaintiff also presents evidence from Mr. Preston, a financial expert, to show that Internap's stock traded on an efficient market.[5] Specifically, Mr. Preston's report shows the following: (1) At all relevant times, Internap was listed and actively traded on NASDAQ; (2) During the Class Period, the average

---

[5] In *Scientific-Atlanta*, Judge Story listed a number of factors courts consider in determining whether a security is traded on an efficient market:

(1) the average weekly trading volume expressed as a percentage of total outstanding shares; (2) the number of securities analysts following and reporting on the stock; (3) the extent to which market makers and arbitrageurs trade in the stock; (4) the company's eligibility to file SEC registration Form S-3 (as opposed to Form S-1 or S-2); (5) the existence of empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price; (6) the company's market capitalization; (7) the bid-ask spread for stock sales; and (8) float, the stock's trading volume without counting insider-owned stock.

571 F. Supp. 2d at 1336 (internal quotation and citation omitted).

19

weekly trading volume of Internap stock was 3,692,569 shares or 7.4%; (3) During the Class Period, Internap was followed by at least five different brokerage houses and/or broker/dealers, resulting in the dissemination of at least 100 analyst reports on the company; (4) Internap was authorized to file Form S-3 registration statements[6] for most of the Class Period, and regularly filed periodic public reports with the SEC; (5) During the Class Period, Internap was covered by 40 market makers, and the company's average market capitalization was $483.9 million; (6) During the Class Period, the average bid-ask spread for sales of Internap stock was 0.33%, and the public float was more than 98%.; and (7) The reactions of Internap's stock to unexpected news and financial releases were statistically significant.

Defendants do not attempt to rebut Plaintiff's fraud-on-the-market theory, but instead argue that Plaintiff has focused too much on it and neglected to establish that each element of his securities fraud claim is subject to class-wide proof. As stated above, however, it is clear that the other elements of his causes of action are susceptible to class-wide proof. Moreover, as the Supreme Court has recognized, "predominance is a test readily met" in cases such as this. *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain

---

[6] "Form S-3 is reserved for companies whose stock is actively traded and widely followed. To file a Form S-3, a company must have filed SEC reports for twelve consecutive months and possess a seventy-five million dollar market capitalization level." *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 n.5 (5th Cir. 2005).

20

cases alleging consumer or securities fraud or violations of the antitrust laws."). The court finds that Plaintiff has established that common questions of law and fact predominate.

### b. Superiority

Under Rule 23(b)(3), Plaintiff must also show that the class action is superior to other available methods of adjudication. "As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." *In re HealthSouth*, 257 F.R.D. at 284. "In making its determination, the Court must find that difficulties in management will not render this action improper for certification." *Scientific-Atlanta*, 571 F. Supp. 2d at 1343 (internal quotation and citation omitted).

Plaintiff argues that a class action is superior in this instance as evidenced by consideration of the four factors found in Rule 23(b)(3). First, "there is no realistic concern for 'the class members' interests in individually controlling the prosecution or defense of separate actions.'" Plaintiffs' Mot. to Certify, at 22 (quoting FED. R. CIV. P. 23(b)(3)(A)). Plaintiff urges that the expense of such individual actions, when weighed against each plaintiff's potential recovery, would be prohibitive for most, if not all, members of the class. Second, "there is no other known competing 'litigation concerning the controversy already begun by or against class members.'" *Id.* at 23 (quoting FED. R. CIV. P. 23(b)(3)(B)). Third, "it is desirable to have all the litigation of all claims in a particular forum in order to 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as

21

to persons similarly situated.'" *Id.* Fourth, "because this is a fairly typical securities class action comprised of uniform claims, there is no reason to believe it will present unusual management difficulties." *Id.* (citing FED. R. CIV. P. 23(b)(3)(D)). Moreover, Plaintiff points out that Internap is located in this district, where many of the witnesses are located, whereas Plaintiff and potential class members are located all over the country.

Defendants do not argue these points, and the court finds that a class action is the superior method for adjudicating this case. "Any interest individual members of the class may have in controlling the litigation is far outweighed by the benefit of distributing the financial burden of the litigation among the class." *Scientific-Atlanta*, 571 F. Supp. 2d at 1344. Given the nature of the claims in this case, it would also likely be infeasible for class members to prosecute suits against Defendants individually. *See id.* Finally, the court does not perceive any difficulties in the management of this litigation separate and apart from those inherent in any large securities class action.

### C. Class Period

Plaintiff seeks one class for the period beginning May 3, 2007, the date of the first alleged false and misleading statements, and ending August 5, 2008, the date of the final supposed curative disclosure. Defendants argue this proposed class period should be adjusted given Plaintiff's remaining claims. Specifically, Defendants urge that because Plaintiff's remaining claims are based on two separate sets of alleged misrepresentations,

22

each with their own separate curative disclosures, there should be two class periods. The first would run from May 3, 2007, through November 6, 2007; the second from April 3, 2008, through August 5, 2008. Defendants reason that the first set of statements in May 2007 relate solely to the progress in the integration of VitalStream, and the only curative statements that relate to integration took place on the November 6 earnings call.[7] According to Defendants, the March 18 and August 5 disclosures revealed nothing about their May 2007 statements. Defendants argue that the November 6 earnings call was fully corrective of the allegedly false May 2007 statements such that it is unreasonable for class members to claim reliance on the May statements after that date. As to the April 3, 2008 statements, Defendants claim that they related solely to the stability of the CDN platform, and the only curative disclosures concerning these issues were the August 5 statements.

The May 3, 2007, statements relate not only to the integration of VitalStream and its CDN, but also the performance of the newly acquired business. Moreover, given that VitalStream's specialization in CDN services appears to have been a major reason for the acquisition in the first place, any discussion of the performance of that unit naturally follows from Defendants' statements regarding the company's progress in the integration of VitalStream. Thus, if Internap had a difficult time integrating VitalStream and its CDN unit,

---

[7] On November 6, 2007, Internap announced that it had lowered 2007 CDN revenue guidance by $2 million and that integration of VitalStream had taken one month longer to complete than the company would have liked. Fourth Am. Compl., ¶ 197.

23

AO 72A
(Rev.8/82)

as Plaintiff alleges, it follows that the performance of Internap's new CDN will suffer. The integration of VitalStream and the performance of the CDN were inextricably intertwined, and the court is not persuaded by Defendants' attempt to neatly distinguish the two sets of statements. Plaintiff alleges that Defendants covered up the problems occurring during integration and then falsely touted the reliability and stability of the Internap's CDN.

Furthermore, the court cannot find as a matter of law that the November 6, 2007, statements were fully corrective of the May statements because Defendants later revealed further and deepening problems in the company's CDN, which "reflected integration challenges." Fourth Am. Compl., ¶ 177.[8] On March 18, Defendants announced a delay in the filing of the company's Form 10-K Annual Report for the fourth quarter and full-year 2007 due to CDN customer credits. On August 5, 2008, Defendants revealed a $3 million reserve of CDN receivables concerning 2007 customers. All of these disclosures and problems related to Internap's integration of VitalStream and the performance of the CDN, and the May 3, 2007, statements were just the first allegedly false and misleading statements discussing these issues. The court agrees with Plaintiff that whether the November 6, 2007, disclosure was fully or partially corrective is at minimum a disputed issue of fact, and therefore the court declines Defendants' request to split Plaintiff's proposed Class Period into two separate periods.

---

[8] During a May 7, 2008, conference call, DeBlasio stated that "CDN outages in the second half of 2007" "reflected integration challenges we experienced by moving traffic from the legacy VitalStream systems to Internap platforms." Fourth Am. Compl., ¶ 177.

24

### III. Conclusion

For the reasons stated herein, the court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Certify Class [68]. The court certifies this action as a class action on behalf of all persons or entities that purchased the common stock of Internap during the period from May 3, 2007 through August 5, 2008, inclusive, and were damaged thereby. The court appoints as a class representative in this action Plaintiff Stephen Anastasio. The court also reaffirms the appointment of Abraham, Fruchter & Twersky, LLP as Class Counsel and Harris Penn Lowry DelCampo LLP as Liason Counsel.

**IT IS SO ORDERED** this 22nd day of August, 2012.

　S/   J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)